UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Illinois Farmers Insurance Company,    Civil No. 17-270(RHK/SER)
21st Century Insurance Company,
Bristol West Casualty Insurance
Company, and Mid-Century
Insurance Company,

              Plaintiffs,

v.                                             **ORDER**

Timothy W. Guthman, D.C.,
Inver Family Chiropractic, P.A.,
Team Chiropractic, P.A., a/k/a
Team Chiropractic, Inc.,
Team Chiropractic Service Corporation,
Alianza Chiropractic Clinic,
Rehabilitations Professionals, Inc.,
Gregory Peter Steiner, D.C.,
Chiropractic Wellness Center, Inc.,
Apple Valley Wellness Center,
Centro Hispano de Ayuda,
Silvia Ross, a/k/a Silvia Pena,
Zulema Calderon, a/k/a Sulema Calderon,
Zulema Levya, and Zulema Manjarrez,
Laura Pimental, a/k/a Analaura Pimental,
Duqueiro Cano, a/k/a "El Duque,"

              Defendants.

    Richard S. Stempel, Bradley L. Doty,[1] Gregory Maus, Stempel & Doty, PLC, Hopkins, Minnesota, for Plaintiffs.

    Kevin M. Magnuson, Kelley, Wolter & Scott, P.A., Minneapolis, Minnesota, for Defendants Timothy W. Guthman, D.C., Inver Family Chiropractic, P.A., Team Chiropractic, P.A., Alianza Chiropractic Clinic, Centro Hispano de Ayuda, Silvia Pena Ross, Laura Pimentel, and Duqueiro Cano.

---

    [1] Counsel is not related to the undersigned.

David W. Asp, Kristen G. Marttila, Lockridge Grindal Nauen P.L.L.P., Minneapolis, Minnesota, for Defendants Gregory Peter Steiner, D.C., Chiropractic Wellness Center, Inc., and Rehabilitation Professionals, Inc.

This matter is before the court upon the motion to dismiss by defendants Gregory Peter Steiner, D.C. and Chiropractic Wellness Center, Inc. (Steiner Defendants) and the motion to dismiss by defendants Timothy W. Guthman, D.C., Inver Family Chiropractic, P.A., Team Chiropractic, P.A., Alianza Chiropractic Clinic, Centro Hispano de Ayuda, Silvia Pena Ross, Laura Pimentel and Duqueiro Cano (Guthman Defendants). Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the Steiner Defendants' motion and grants in part the Guthman Defendants' motion.

**BACKGROUND**

This fraud action arises out of defendants' alleged scheme to defraud automobile insurers. Plaintiffs Illinois Farmers Insurance Company, 21st Century Insurance Company, Bristol West Casualty Insurance Company, and Mid-Century Insurance Company issue automobile-insurance policies in Minnesota. Am. Compl. ¶¶ 6-10. Under the Minnesota No-Fault Automobile Insurance Act, Minn. Stat. § 65B.41 et seq., insurers are required to provide "basic economic loss benefits" – a minimum of $20,000 for necessary medical expenses – in each automobile policy sold in

2

Minnesota. The Act is designed to expedite payments to those injured in accidents without regard to fault in order to "relieve the severe economic distress of uncompensated victims" and "encourage appropriate medical and rehabilitation treatment." Minn. Stat. § 65B.42. Insurers must make these payments within 30 days of being billed by a medical provider. Id. § 65B.54.

Guthman and Steiner are Minnesota chiropractors. Am. Compl. ¶¶ 12, 16-17. Plaintiffs allege that they took advantage of the no-fault insurance system by billing for (1) medically unnecessary treatments at their clinics[2] or (2) services that were not actually provided. To accomplish this, they paid people, referred to as "runners," to solicit prospective patients. Id. ¶ 26.[3] The runners, in turn, would provide cash to accident victims to entice them to go to the clinics, which then "billed [plaintiffs] for services not rendered," "provided excessive treatment which was not necessary, treated [the individuals] at a frequency that was unreasonable[,] and generally developed a pattern and practice of excessive

---

[2] The clinics include defendants Inver Family Chiropractic, Team Chiropractic, and Alianza Chiropractic Clinic, each of which is owned by Guthman; and Chiropractic Wellness Center, which is owned by Steiner.

[3] The alleged runners are defendants Ross, Pimentel, and Cano. Defendant Sulema Calderon is also alleged to be a runner but is not a party to the instant motions.

treatment modalities and therapy to maximize the charges [they] could submit for no-fault medical benefits." Id. ¶¶ 25, 40. The amended complaint alleges that Guthman specifically instructed runners to target plaintiffs' insureds, because plaintiffs ostensibly "paid claims faster than other no-fault insurers." Id. ¶ 39. Ultimately, plaintiffs paid more than $750,000 for services billed by Guthman, Steiner, and their clinics. Id. ¶ 38.[4]

Plaintiffs commenced this matter in early 2017, alleging numerous claims. Defendants moved to dismiss, and plaintiffs then filed the amended complaint, asserting seven claims: violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c) (Count 1) and § 1962(d) (Count 2); violation of the Minnesota consumer-fraud statute, Minn. Stat. § 325F.69 (Count 3); civil conspiracy (Count 4); common-law fraud (Count 5); no-fault fraud (Count 6); and unjust enrichment (Count 7). The Guthman Defendants and the Steiner Defendants now move to dismiss all of these claims.

---

[4] These same allegations form the basis of a criminal case pending against Guthman, charging him with conspiracy to commit mail fraud and health-care fraud. See United States v. Guthman, Crim. No. 17-67 (D. Minn. filed Mar. 22, 2017).

4

**DISCUSSION**

**I. Standard of Review**

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

**II. The RICO Claims**

Congress enacted RICO in 1970 as part of the Organized Crime Control Act, Public Law No. 91-452, in an effort to combat mob-related activities and organized crime. The statute makes it unlawful for "any person employed by or associated with any enterprise ... to conduct or participate, directly or

indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). "Racketeering activity" includes a host of enumerated crimes such as murder, kidnapping, robbery, and, relevant here, mail fraud. Id. § 1961(1). In addition to possible criminal penalties, RICO provides a civil remedy for persons injured by a violation of its substantive provisions. See id. § 1964(c). To show a civil RICO violation, a plaintiff must demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Crest Constr. II, Inc. v. Doe, 660 F.3d 346, 353 (8th Cir. 2011).

Here, plaintiffs allege that Guthman, Steiner, their clinics, and the runners violated RICO by associating with each other to achieve the purpose of billing and receiving improper no-fault benefit payments. Defendants argue that this claim fails as a matter of law because, among other things, plaintiffs have not alleged the existence of an "enterprise" distinct from the alleged racketeering activity itself. The court agrees.

A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An "association in fact," requires a discrete structure and existence uniting its members as a cognizable group. Nelson v. Nelson, 833 F.3d 965, 968 (8th

6

Cir. 2016). Although such association need not have regular meetings or a chain of command, it must comprise something more than a pattern of racketeering activity. Id.; see also United States v. Turkette, 452 U.S. 576, 583 (1981) ("The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages."). A plaintiff, therefore, must demonstrate that the alleged enterprise would exist in the absence of the alleged racketeering activity. Crest Constr., 660 F.3d at 354-55. In other words, "[t]he focus of the inquiry is whether the enterprise encompasses more than what is necessary to commit the predicate RICO offense." Diamonds Plus, Inc. v. Kolber, 960 F.2d 765, 770 (8th Cir. 1992); see also Sebrite Agency, Inc. v. Platt, 884 F. Supp. 2d 912, 919 n.4 (D. Minn. 2012) ("[T]he Eighth Circuit has continued to require that a RICO enterprise have a structure that is separate and distinct from the pattern of racketeering activity.").

The court recently addressed the "enterprise" element of a civil RICO claim in a similar action. In Illinois Farmers Insurance Co. v. Mobile Diagnostic Imaging, Inc., No. 13-2820, 2014 WL 4104789 (D. Minn. Aug. 19, 2014) ("MDI"), the plaintiffs – three of the four insurance companies in this case – alleged that an individual (Appleman) and his company (MDI) paid kickbacks to several chiropractors for MRI referrals. The

7

services were then submitted to each patient's insurer for no-fault benefits. The plaintiffs sued under RICO alleging that the defendants (Appleman, MDI, and each of the chiropractors receiving kickbacks) had "devised schemes to defraud Plaintiffs by requesting reimbursement for medically unnecessary scans and/or scans incentivized by the payment of kickbacks." Id. at *14. The court rejected the claim as a matter of law: "if the allegations of the complaint are true, the relationship between MDI and Appleman (on the one hand) and the defendant chiropractors and clinics (on the other hand) was made up entirely of fraud. Without that alleged fraud, then, there would be no enterprise." Id. In other words, absent an enterprise distinct from the alleged racketeering activity, the RICO claim failed. See also Stephens, Inc. v. Geldermann, Inc., 962 F.2d 808, 815-16 (8th Cir. 1992) (holding that plaintiff failed to prove the existence of an enterprise under RICO because "[t]he only common factor that linked all these parties together and defined them as a distinct group was their direct or indirect participation in [the] scheme to defraud [plaintiff]."). The same result must follow here.

The gravamen of the amended complaint is that defendants associated for the purpose of defrauding plaintiffs out of no-fault benefits by funneling accident victims to the clinics in order to provide unnecessary treatment or to bill for treatment

that was not actually provided. Without this fraudulent activity, no enterprise would exist. The RICO claims thus fail.

Plaintiffs respond that the enterprise independently exists without the fraudulent acts because the clinics are otherwise legitimate. This argument, however, ignores the allegations in the amended complaint. For example, plaintiffs seem to suggest the runners served some type of legitimate purpose – finding patients without improper solicitation – but they have only alleged that the runners were used to solicit accident victims in exchange for payment. See Am. Compl. ¶¶ 34-36. Further, the amended complaint alleges an enterprise comprising all defendants, i.e., the clinics, the chiropractors, and the runners, not just the clinics. Id. ¶ 31. As a result, the fact that part of the "enterprise" may have been engaged in lawful business is irrelevant. See Stephens, 962 F.2d at 815-16 (affirming dismissal of RICO claim despite fact that members of alleged enterprise "carried on other legitimate activities"); MDI, 2014 WL 4104789, at *15 n.11 ("Components of each alleged enterprise have separate structures and engage in legitimate activities .... But the enterprise itself – that is, the thing that connects or that is made up of the component parts – does nothing except engage in fraud, according to the complaint.") (emphases omitted).

Because the amended complaint does not plausibly allege an enterprise limited to the clinics, plaintiffs' claim under § 1964(c) fails, as does their RICO conspiracy claim under § 1962(d). See Jennings v. Bonus Bldg. Care, Inc., No. 4:13-CV-663, 2014 WL 1806776, at *10 (W.D. Mo. May 7, 2014) ("If no one defendant has caused injury through racketeering activity, then § 1962(d) conspiracy liability cannot attach to any defendant.") (citing Beck v. Prupis, 529 U.S. 494, 505 (2000)).

**III. The Remaining Claims**

    **A.   Minnesota Consumer Fraud Act**

Minnesota's Consumer Fraud Act prohibits the use of "fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice ... in connection with the sale of any merchandise." Minn. Stat. § 325F.69, subdiv. 1.[5] Generally speaking, the Minnesota Attorney General has the authority to prosecute consumer fraud and similar statutory violations by seeking injunctive relief and civil penalties. Minn. Stat. § 8.31, subdiv. 1. However, an individual may assert a claim under the Act as a "private attorney general." Id. § 8.31, subdiv. 3a. To do so, the plaintiff must seek a "public benefit." Buetow v. A.L.S. Enters., Inc., 888 F. Supp. 2d 956, 959 (D. Minn. 2012).

---

[5] "Merchandise" is defined to include services. Minn. Stat. § 325F.68, subdiv. 2.

Defendants argue that plaintiffs do not seek any public benefit because plaintiffs do not allege fraudulent or false statements to the general public and primarily seek reimbursement of the sums paid to defendants. Plaintiffs respond that their consumer-fraud claim benefits the general public because they also seek injunctive relief enjoining defendants' fraudulent conduct and inappropriate treatment of insureds.

Several courts, including this one, have held that claims seeking injunctive relief are more likely to serve a public benefit than claims seeking damages. See, e.g., Buetow, 888 F. Supp. 2d at 961; In re Levaquin Prods. Liab. Litig., 752 F. Supp. 2d 1071, 1076-77 (D. Minn. 2010). But "a request for injunctive relief does not necessarily establish a public benefit," In re Levaquin, 752 F. Supp. 2d at 1077, particularly where the relief "is at best incidental to [a] request for money damages," MDI, 2014 WL 4104789, at *20. That is the case here. Indeed, the amended complaint makes clear that the injunction plaintiffs seek is not intended to benefit the public at large, but only plaintiffs and their insureds. See Am. Compl. ¶ 151 ("Plaintiffs are entitled to an injunction prohibiting Defendants from further treating Plaintiffs' insureds."). Moreover, a review of the amended complaint as a whole reveals that plaintiffs do not truly seek a public benefit. Over more

than 100 paragraphs and 41 pages, plaintiffs repeatedly cite the damage defendants' alleged conduct caused them. See, e.g., id. ¶¶ 24, 125, 149. As in MDI, the court concludes that the request for injunctive relief was merely "incidental" to and "grafted" onto plaintiffs' request for damages and does not serve the public interest necessary to bring a private cause of action under § 325F.69. 2014 WL 4104789, at *20; see also Select Comfort Corp. v. Tempur Sealy Int'l, Inc., 11 F. Supp. 3d 933, 940 (D. Minn. 2014) (dismissing consumer-fraud claim because the relief sought, including injunctive relief, was not "primarily aimed at altering the defendant's conduct") (internal quotation and citation omitted).

**B. Other Fraud-based Claims**

The remaining claims assert a civil conspiracy (Count 4), common-law fraud (Count 5), no-fault fraud (Count 6), and unjust enrichment (Count 7). Each is predicated on the existence of a fraudulent scheme perpetrated by defendants. See, e.g., Am. Compl. ¶¶ 156, 159, 166, 173. According to plaintiffs, that scheme resulted in the submission of hundreds of false claims, for which plaintiffs paid more than $750,000.[6]

---

[6] Plaintiffs have provided charts listing all of the allegedly fraudulent claims submitted, including the claim number, the amount, and the date. See Am. Compl. Ex. 2. Plaintiffs believe that every claim submitted by Guthman, Steiner, and their clinics from the inception of the fraud – approximately 2010 – was fraudulent.

Fraud claims, including those simply sounding in fraud, must meet Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement. Drobnak v. Andersen Corp., 561 F.3d 778, 784 (8th Cir. 2009). This requires a plaintiff to "state with particularity the circumstances constituting fraud" or, in other words, "identify the who, what, where, when, and how of the alleged fraud." U.S. ex rel. Thayer v. Planned Parenthood of Heartland, 765 F.3d 914, 917 (8th Cir. 2014) (internal quotation marks and citations omitted). Courts must read Rule 9(b) "in harmony with the principles of notice pleading," but fraud claims require "a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 746 (8th Cir. 2002) (internal quotation marks and citation omitted). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient." Id.

The crux of defendants' motions with respect to the fraud-based claims is that they are not adequately pleaded under Rule 9(b). The court agrees, in part.

### 1. The Guthman Defendants

The Guthman Defendants argue that the amended complaint does not meet the Eighth Circuit's interpretation of Rule 9(b) as set forth in U.S. ex rel. Joshi v. St. Luke's Hospital, Inc.,

13

441 F.3d 552 (8th Cir. 2006). In Joshi, the court held that a plaintiff must plead at least a few "representative examples of the[] alleged fraudulent conduct, specifying the time, place, and content of the[] acts and the identity of the actors" to establish an "indicia of reliability" with respect to the alleged fraud. Id.

In an attempt to comply with Joshi, plaintiffs identified eighteen claims submitted by defendants as representative examples of the purported fraud. See Am. Compl. ¶¶ 68-114. Generally speaking, those examples specify when the claims were made, the particular claim numbers, who submitted them, and what was fraudulent about them. For example, in one instance plaintiffs allege that following a car accident on February 21, 2012, Guthman and Inver Family Chiropractic billed more than $19,000 for services treating the insured's neck and back "even though the policyholder had suffered a torn ACL in his left knee" and "never had any neck pain." Id. ¶¶ 75-76. Similarly, the amended complaint alleges that following a car accident on December 18, 2011, plaintiffs were billed for treatment to a husband and wife by Guthman and Alianza Chiropractic for (i) "adjustments" to the wife, even though she "did not receive adjustments due to being in too much pain," and (ii) mechanical traction for the husband that was not actually provided. Id. ¶¶ 68-74. In another instance, plaintiffs allege that a child

14

injured in a car accident complained only of neck pain, but Guthman nevertheless billed more than $1,100 for x-rays and claimed that the patient reported "severe pain throughout her neck, upper back, chest and right knee." Id. ¶ 103. Plaintiffs argue that each of these examples are emblematic of the broader fraudulent scheme alleged.

The Guthman Defendants attempt to minimize these examples as isolated incidents of purported overbilling or mistaken billing. The court is not persuaded. Plaintiffs' representative examples, coupled with other indicia of reliability – most notably the corroboration of a cooperating witness - are sufficient to plausibly allege fraud. See, e.g., id. ¶ 40 (alleging that Guthman ordered the cooperating witness to pay accident victims to obtain treatment in the clinic, even though the patients denied being injured).[7]

The Guthman Defendants, relying on MDI, argue that allegations of improper solicitation are insufficient to give rise to a fraud claim. In MDI, the court found the fraud claim

---

[7] The Guthman Defendants argue that the court should disregard allegations provided by the witness because he or she is anonymous. But plaintiffs identified the witness at oral argument and the allegations are detailed enough to identify the person in any event. See Am. Compl. ¶¶ 48, 55. Further, reliance on an anonymous witness is not uncommon in cases involving healthcare fraud. See, e.g., State Farm Mut. Auto. Ins. Co. v. Healthcare Chiropractic Clinic, Inc., Civ. No. 15-2527, 2015 WL 6445324 (D. Minn. Oct. 23, 2015).

lacking, because even if patients had been improperly solicited, that did not mean they were improperly treated:

> One of the major weaknesses of plaintiffs' case is their failure to recognize that the payment of kickbacks (on the one hand) and the medical necessity and reasonableness ... of an MRI scan (on the other hand) are entirely separate questions.

2014 WL 4104789, at *10. As already noted, however, the alleged scheme here involves not only soliciting victims, but also the submission of patently false and fraudulent claims. Plaintiffs therefore have complied with Rule 9(b) with respect to Guthman and his clinic.

Plaintiffs have failed to do so, however, with respect to the runners. Although plaintiffs provide some allegations that the runners solicited patients for treatment at the clinics, see Am. Compl. ¶ 92, in most instances the allegations lack any degree of specificity. See id. ¶ 75 (alleging that "the policyholder was solicited for treatment with Defendants Guthman and Defendant Inver Family [Chiropractic] by an agent of the Defendants"); id. ¶ 96 (alleging that "the policyholder received a call from one of the Defendant Runners after the policyholder's involvement in a motor vehicle accident"). Plaintiffs cannot simply lump together all defendants and provide allegations about only some of them. Petersen v. England, No. 09-2850, 2010 WL 3893797, at *10 (D. Minn. Sept.

30, 2010); Moua v. Jani-King of Minn., Inc., 613 F. Supp. 2d 1103, 1111 (D. Minn. 2009).

More important, plaintiffs seem to overlook the distinction between payments to the runners and the allegedly fraudulent billing. As recognized in MDI, even if kickbacks to the runners were unlawful, that does not necessarily mean the treatment provided – and the billing - was improper. 2014 WL 4104789, at *10. In other words, the fact that the runners were paid does not necessarily mean that they were involved in the fraudulent scheme alleged. Plaintiffs argue that the runners were aware of the scheme, but they make no such allegation. As a result, the amended complaint does not plausibly allege that the runners knowingly participated in a scheme to defraud.

### 2. The Steiner Defendants

Much like the allegations against the runners, the amended complaint is significantly less detailed with respect to Steiner and Chiropractic Wellness. Plaintiffs only provide examples that Ross, a runner, performed medical services on policyholders despite not having a license to do so, and for which plaintiffs were billed. See Am. Compl. ¶¶ 80-87, 99-102. But unlike the allegations with respect to Guthman, plaintiffs do not provide sufficient detail to plausibly allege fraud by the Steiner Defendants. In the examples provided in the amended complaint, plaintiffs do not allege that the patients did not actually need

17

the treatment provided or that the bills submitted for those services were unreasonable. See id. ¶¶ 85, 100, 101. Nor have plaintiffs provided sufficient other "reliable indicia that lead to a strong inference that [false] claims were actually submitted." Thayer, 765 F.3d at 919. Indeed, the amended complaint does not cite to any first-hand knowledge of Steiner's billing practices or other "reliable indicia" to suggest that the Steiner Defendants "actually submitted" false claims. Though plaintiffs point to the cooperating witness, there is no indication the witness was involved in billing or knew that Steiner was providing medically unnecessary treatment. As a result, the fraud-based claims against the Steiner Defendants fail as a matter of law.

**CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Guthman Defendants' motion to dismiss [ECF No. 62] is granted in part as follows:

    a. The motion is granted as to the claims against Ross, Pimentel, Cano, and Centro Hispano de Ayuda, and the claims against these defendants are dismissed with prejudice;

b. The motion is granted as to the RICO claims (Counts 1 and 2) and the Minnesota Consumer Fraud Act claim (Count 3) against Guthman, Inver Family Chiropractic, Team Chiropractic, and Alianza Chiropractic, and those claims are dismissed with prejudice;

c. In all other respects, the Guthman Defendants' motion is denied; and

2. The Steiner Defendants' motion to dismiss [ECF No. 60] is granted, and all claims asserted against those defendants are dismissed with prejudice.

Dated: September 7, 2017

                                               s/David S. Doty
                                               David S. Doty, Judge
                                               United States District Court